# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 11-07554-DD |
| Low Country Land, LLC, | Chapter 11 |
| Debtor. | **ORDER DENYING CONFIRMATION** |

This matter is before the Court for confirmation of a chapter 11 plan filed by Low Country Land, LLC ("Debtor"). Debtor filed a chapter 11 plan on June 26, 2012, and First Citizens Bank and Trust Company, Inc. ("Bank") filed an objection on July 31, 2012. Debtor proposed modifications to the plan on August 7, the day of the confirmation hearing. Bank appeared at the hearing and maintained its objection to Debtor's plan, as amended. At the conclusion of the hearing, the Court took the matter under advisement. The Court now issues the following Findings of Fact and Conclusions of Law.

## **FINDINGS OF FACT**

Debtor filed its chapter 11 case on December 7, 2011. Debtor was formed in 1999 and owns two pieces of real property: an unimproved lot in Georgetown County, South Carolina and a 9.93 acre parcel, with approximately 4.57 acres developed as a shopping center with a grocery store and a general merchandise store. Debtor's other assets include an automobile, a tractor, and some funds in a checking account.[1] The sole members of Debtor are John H. Holt, III and Carole Ann Holt.

In January 2008, Williamsburg First National Bank loaned Debtor $703,783.92. The loan was secured by Debtor's 9.93 acres of real property, as well as an assignment of leases and

---

[1] Debtor's Schedule B, filed on December 21, 2011 and amended on March 22, 2012, shows the amount in the checking account as $15,228.57. The amended Schedule B added a disputed rent receiveable from the grocery store lease in the amount of $22,000.

rents. Mr. and Mrs. Holt guarantied the note. First Citizens subsequently acquired Williamsburg First National Bank's assets, including the note, mortgage, and assignment of leases and rents, by assignment from the FDIC as receiver. The note matured, and Debtor failed to pay it; as a result, Bank commenced a foreclosure action on July 7, 2011. The foreclosure action was stayed by the bankruptcy filing. As of July 30, 2012, Bank asserts that the total payoff on the note is $553,160.99, plus attorneys' fees and costs of $33,390.28. There are no other liens on the 9.93 acre parcel.

Despite the bankruptcy filing, Bank continued its collection action on Mr. and Mrs. Holt's guaranties, and on February 6, 2012, Bank obtained a judgment against them in the amount of $628,189.25. Bank has two additional judgments against Mr. and Mrs. Holt which arise from their guaranties of the debts of a related entity. Those two judgments total $2,967,432.38 as of June 4, 2012. Bank commenced supplementary proceedings against Mr. and Mrs. Holt and obtained charging liens against their membership interests in Debtor. A receiver was also appointed by an order of the state court on July 30, 2012.

Debtor's amended plan proposes the sale of the assets of Debtor to CJ Development, LLC ("CJ"), an entity whose sole members are Catherine and John Holt, the daughter and son of Mr. and Mrs. Holt. The proposed sale price is $920,500.[2] The plan provides that CJ will fund the purchase with a loan from First Reliance Bank in the amount of $750,000 secured by the assets being sold, plus additional consideration as follows:

> Catherine Holt, a member of CJ Development, LLC will take assignment of the First Bank note secured by the automobile, for $15,000. CJ Development, LLC will assume a promissory note of $26,500 of the debt to First Reliance Bank that will not be funded at closing. In addition, CJ Development LLC, will pay will pay [sic] the priority tax claim to Georgetown County, the unsecured claim to BMW Financial, and all future administrative expenses that will be incurred, such

---

[2] Debtor filed a further amended plan on August 28, 2012, which proposes a sale price of $930,500. That plan is not currently before the Court.

>as US Trustee quarterly fees, attorney fees, and appraisal fees. It is estimated that these expenses will be approximately $12,000. CJ Development, LLC will also waive the Debtor's obligation to pay its pro-rata share of real property taxes at closing, estimated to be $13,335 for Florence County and $1,200.00 for Georgetown County. The remaining balance of the purchase price will be paid to the Debtor and its' members through a note. This additional amount due shall be satisfied in full by the members of CJ Development LLC, amortizing the amount thereof with interest as follows: i) commencing the first day of the month following the month in which the Effective Date falls and continuing on the first day of each month thereafter, the purchaser shall pay the debtor the amount due, estimated at $102,465, with interest at the rate of four (4.0%) per annum, in consecutive monthly installments of Six Hundred Twenty One dollars and forty cents ($621.40), calculated based upon an amortization of two hundred forty months from and after the effective date. Notwithstanding such amortization period, any unpaid accrued interest and principal shall be due and payable, in full, on the 120th month following the month of which the effective date falls. The debtor's members propose to assign this note to their judgment creditors.

Debtor's Amended Plan, pg 3, docket #66, filed August 7, 2012.

Bank objects to confirmation and argues that Debtor's members do not have authority to sell Debtor's assets because a receiver has been appointed, causing Mr. and Mrs. Holt to be dissociated from Debtor and divesting them of any rights to participate in the management of Debtor, other than to wind up Debtor's business. Further, Bank argues that Debtor's plan is not proposed in good faith because it proposes the sale of all of Debtor's assets to the children of Mr. and Mrs. Holt for less than the value of the 9.93 acre parcel. Finally, Bank argued in its Objection that the plan should not be confirmed because it does not provide for the payment of post-petition interest and attorneys' fees; however, Bank indicated at the confirmation hearing that this ground for objection was satisfied by the August 7 amended plan.

Because of the dispute regarding the value of the 9.93 acre parcel, both parties presented testimony from appraisers at the confirmation hearing. Both appraisers were permitted to testify and offer opinions as experts in the valuation of commercial real estate. Debtor's appraisal was prepared by Roger Kirby of Kirby Realty & Construction, Inc. Mr. Kirby provided a value for

the 4.57 acres on which the shopping center sits. Mr. Kirby gave his opinion that the 4.57 acre parcel and improvements are worth $920,000. Mr. Kirby did not attribute any value to the remaining undeveloped real property. He testified that he did not assign a value to the undeveloped property because it was simply excess land and did not have any utility. Bank's appraisal was prepared by Andrew Fowler and Julian Graham. Mr. Graham gave his opinion that the 9.93 acres and improvements are worth $1,080,000; $903,000 of that value is for improvements, while $177,000 is for the land. Bank's appraisal does not contain a breakdown of the respective values attributed to the 4.57 acres and the other, undeveloped portion of the property. Debtor's Schedule A, filed December 21, 2011, as well as the liquidation analysis contained in Debtor's disclosure statement, lists the value of the property as $1,079,204.00,[3] which is based on a valuation by the county tax assessor.

There were disputes in the evidence concerning the undeveloped portion of the property. For example, there was conflicting testimony regarding whether improvements could be made to the undeveloped portion of the parcel, based on the soil type and the cost of development. Further, there was a dispute as to whether city water and sewer service were available for the undeveloped portion of the property. Testimony regarding access to the parcel was also presented and suggested that the undeveloped parcel does not have appropriate public access for any significant commercial purpose.

## CONCLUSIONS OF LAW

**I. Authority to Sell Debtor's Assets**

S.C. Code § 33-44-601 provides, in relevant part:

A member is dissociated from a limited liability company upon the occurrence of any of the following events: . . . (7) the member's: . . . (iv) failing, within ninety days after

---

[3] Debtor testified that it used this value because it was the best information it had at the time and because no appraisal of the property had yet been conducted.

> the appointment, to have vacated or stayed the appointment of a trustee, receiver, or liquidator of the member or of all or substantially all of the member's property obtained without the member's consent or acquiescence, or failing within ninety days after the expiration of a stay to have the appointment vacated.

S.C. Code § 33-44-601(7)(iv) (1976).  The effect of dissociation is set forth in S.C. Code § 33-44-603(3):

> Upon a member's dissociation, . . . (3) the member's right to participate in the management and conduct of the company's business terminates, except as otherwise provided in Section 33-44-803, and the member ceases to be a member and is treated the same as a transferee of a member.

Bank argues that that the triggering event for dissociation is the appointment of a receiver; because a receiver was appointed on July 30, 2012, the triggering event for dissociation of Mr. and Mrs. Holt has already occurred.  As a result, Bank argues, they should not be allowed to sell their interest in the short period of time between the appointment of a receiver and the expiration of their opportunity to contest the appointment.  Debtor responds that S.C. Code § 33-44-601(7)(iv) gives a member 90 days to contest the appointment of a receiver before dissociation occurs, and that in the 90 day time period, the LLC's members continue to have the ability to exercise their authority as members.

The Court agrees with Debtor.  Section 33-44-601(7)(iv) clearly provides that dissociation does not occur until the member fails, within 90 days *after* the appointment of the receiver, to have the appointment vacated or stayed.  Mr. and Mrs. Holt remain members during the 90 day time period and retain the right to manage the LLC until dissociation actually occurs.  Because dissociation does not occur in this case until October 28, 2012, 90 days after the appointment of the receiver, Mr. and Mrs. Holt can continue to exercise their rights as members until that date.

## II. Confirmation Under 11 U.S.C. § 1129

11 U.S.C. § 1129 sets forth several requirements that a chapter 11 plan must meet before it can be confirmed. Bank argues that Debtor's proposed plan violates section 1129(a)(3), requiring that the plan "has been proposed in good faith and not by any means forbidden by law." Bank argues that the plan is not proposed in good faith because it proposes to transfer Debtor's assets to a new entity controlled by Mr. and Mrs. Holt's children for less than full value. This also implicates section 1129(a)(7), which requires that a creditor who does not accept a debtor's proposed plan must receive at least what it would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7); *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 482 (Bankr. D.S.C. 2010). Bank has a charging lien against Mr. and Mrs. Holt's membership interests in Debtor. The plan proposes a recovery for the equity interest of Mr. and Mrs. Holt, which is then assigned to Bank. If, as Bank contends, the property conveyed under the plan has a greater value than the sales price, the member equity interests are not extinguished for fair compensation. While Debtor has other assets, the parties have contested only the valuation of the shopping center.

"[R]eal estate valuations 'are matters of art more than science.'" *In re Strever*, 468 B.R. 776, 782 (Bankr. D.S.C. 2012) (quoting *Whiteford v. Hildreth (In re Hildreth)*, No 1:09-bk-09029 MDF, Adv. No. 1:10-ap-MDF, 2011 WL 1332036, at *5 (Bankr. M.D. Pa. Apr. 7, 2011)). In this case, Debtor's appraiser did not attribute any value to the undeveloped portion of the 9.93 acres, stating that it was excess land and that it had no utility. Bank's appraisal does not differentiate between the developed and undeveloped portions of the tract, but, considering the entire 9.93 acre tract, arrives at a value $160,000 greater than Debtor's appraisal. The undeveloped portion of the property has some value, but it is not clear from the evidence exactly what that value is. Because Bank's appraisal considers the undeveloped portion in arriving at a

total value of the property, it is entitled to greater weight than Debtor's appraisal. Additionally, Bank's appraisal uses more recent comparable sales for properties closer in proximity to the shopping center. The Court finds that the value of the 9.93 acre parcel is at least $1,000,000. Because Debtor's plan proposes to sell the 9.93 acre parcel for less than full value, and therefore does not comply with the requirements of section 1129 set forth above, confirmation of the plan dated August 7, 2012 is denied.

## CONCLUSION

For the reasons set forth above, confirmation of Debtor's August 7, 2012 amended plan is denied. Debtor has twenty (20) days from the date of entry of this Order to propose a new plan and, if necessary, a new disclosure statement. If Debtor fails to do so within twenty (20) days, this case may be dismissed without further notice or hearing pursuant to SC LBR 3016-1(c).

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**09/07/2012**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 09/07/2012